# 12-2509-cv

IN THE

## United States Court of Appeals

FOR THE SECOND CIRCUIT



ANDREW E. ROTH, DERIVATIVELY ON BEHALF OF
LEAP WIRELESS INTERNATIONAL, INC.,

*Plaintiff-Appellant,*

*v.*

THE GOLDMAN SACHS GROUP, INC., GOLDMAN, SACHS & CO.,
LEAP WIRELESS INTERNATIONAL, INC.,

*Defendants-Appellees.*

———————————

*On Appeal from the United States District Court
for the Southern District of New York (New York City)*

## BRIEF FOR PLAINTIFF-APPELLANT

KORNSTEIN VEISZ
   WEXLER & POLLARD, LLP
757 Third Avenue
New York, New York 10017
212-418-8600

OSTRAGER CHONG FLAHERTY
   & BROITMAN P.C.
570 Lexington Avenue
New York, New York 10022
212-681-0600

*Attorneys for Plaintiff-Appellant Andrew E. Roth,
derivatively on behalf of Leap Wireless International, Inc.*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................. ii

STATEMENT OF JURISDICTION................................................... 1

STATEMENT OF THE ISSUES..................................................... 1

STATEMENT OF THE CASE.......................................................... 5

STATEMENT OF FACTS        ........................................................ 9

SUMMARY OF ARGUMENT ........................................................ 10

STANDARD OF REVIEW ............................................................ 12

ARGUMENT ................................................................................. 13

I.    THE DISTRICT COURT ERRED IN ITS CONSTRUCTION
      OF RULE 16b-6(d) AND DISMISSAL OF THE COMPLAINT .............. 13

      A.    Background of the Statute and the Rule............................ 13

      B.    The Decision Improperly Adds A New
            Requirement to the Rule Which Undermines
            The SEC's Regulatory Framework .................................... 15

      C.    The Proper Analysis Is That The Writing of
            The Options Represents a Simultaneous Purchase
            And Sale of the Underlying Equity Security...................... 17

CONCLUSION ............................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allaire Corp. v. Okumus,*
    433 F.3d 248 (2d Cir. 2006) ............................................................. *passim*

*Booth v. Varian Assoc.,*
    334 F.2d 1 (1st Cir. 1964), *cert. denied*, 379 U.S. 961 (1965)..................... 19

*Colema Realty Corp. v. Bibow,*
    555 F.Supp. 1030 (D. Conn. 1983) ............................................................. 18

*DiLorenzo v. Murphy,*
    443 F.3d 224 (2d Cir.2006) ............................................................. 3, 7, 18

*Foremost-McKesson, Inc. v. Provident Sec. Co.,*
    423 U.S. 232 (1976)............................................................................... 14

*Gwozdzinsky v. Zell/Chilmark Fund, L.P.,*
    156 F.3d 305 (2d Cir. 1998) ............................................................. *passim*

*Huppe v. WPCS Int'l Inc.,*
    670 F.3d 214 (2d Cir 2012) ............................................................. 17

*Kern County Land Co. v. Occidental Petroleum Corp.,*
    411 U.S. 582 (1973)............................................................. 13, 14, 19

*Magma Power Co. v. The Dow Chemical Co.,*
    136 F.3d 316 (2d Cir. 1998) ............................................................. 7, 14, 17

*Matas v. Seiss,*
    467 F. Supp. 217 (S.D.N.Y. 1979) ............................................................. 18

*Morales* v. *Quintel Entm't, Inc.,*
    249 F.3d 115 (2d Cir. 2001) ............................................................. 2, 10

*Pullman-Standard v. Swint*,
    456 U.S. 273 (1982)................................................................... 12

*Reece Corp. v. Walco National Corp.*,
    565 F.Supp. 158 (S.D.N.Y. 1981) ............................................ 18

*Roth v. Goldman Sachs Group, Inc.*,
    No. 11 Civ. 4820, 2012 Dist. LEXIS 78258
    (S.D.N.Y. Jun. 5, 2012) ............................................................ 5

*Roth v. Perseus, LLC*,
    522 F.3d 242 (2d Cir. 2008) ...................................................... 17

*Steel Partners II, L.P. v. Bell Indus,, Inc.*,
    315 F.3d 120 (2d Cir. 2002) ...................................................... 19

## Statutes

Securities and Exchange Act of 1934 ("Act"), (15 U.S.C. § 78a *et seq.*)

    § 78c(a)(13), Act § 3(a)(13) ........................................   3, 7, 11, 17
    § 78m(d), Act § 13(d) ..................................................2, 10
    § 78m(d)(3), Act § 13(d)(3)..........................................   5
    § 78p(a), Act § 16(a) ...................................................   13
    § 78p(b), Act §16b............................................................. *passim*

Judicial Code (28 U.S.C.)

    § 1291 ............................................................................   1
    § 1331 ............................................................................   1

## Rules

SEC Rule 16b-6(a), 17 C.F.R. 240.16b-6(a)....................................   9, 15
SEC Rule 16b-6(d), 17 C.F.R. 240.16b-6(d) ................................. *passim*

Fed. R. Civ. P. 12(b)(6)....................................................... 1, 5, 6

## Other Authorities

*Ownership Reports and Trading by Officers, Directors
    and Principal Security Holders*, Exchange Act
    Release No. 34-28869, 56 Fed.Reg. 7242 (Feb. 21, 1991) .......... 8, 9, 11, 14

Arnold S. Jacobs, *Disclosures & Remedies
    Under the Secureties Laws*, *Vol. 5A* (June 2012) ............................ 8, 11, 18

Peter J. Romeo and Alan L. Dye,
    *Section 16 Treatise and Reporting Guide*, 3d. Ed. (2008) .......................... 9

## STATEMENT OF JURISDICTION

The District Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331.  This is an action brought pursuant to Section 16(b) of the Securities Exchange Act of 1934 ("§16(b)") (15 U.S.C. § 78p(b)) to recover profits made by Defendants-Appellees in violation of that statute.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.  The District Court issued a Memorandum Opinion and Order dated June 5, 2012 (A53)[*] ("Decision") granting Defendants' motion to dismiss the complaint (A7) pursuant to Fed. R. Civ. P. 12(b)(6).  The Clerk's Judgment was entered on June 8, 2012 (A71).  Plaintiff filed a timely notice of appeal on June 21, 2012 (A72).

## STATEMENT OF THE ISSUES

Under SEC Rule 16b-6(d)(the "Rule"), any insider who writes a short call option on securities of an issuer is liable under Section 16(b) to the extent of any premium received for writing the option if the option expires unexercised within six months of its writing.  That is precisely what happened here.  On September 30, 2009, Defendants wrote short call options covering 3.2 million shares of common stock in Leap Wireless International, Inc. ("Leap Wireless" or the "Company") (the "Options").   The Options expired

---

[*] Citations to "A" refer to the Joint Appendix.

unexercised on January 16, 2010 – within the 6-month the period prescribed by the Rule.  Defendants realized premiums in the total amount of $1,056,000 that is subject to disgorgement to Leap Wireless as the issuer.

Defendants acknowledge that they were insiders by virtue of holding more than 10% of Leap Wireless' outstanding shares as of the writing of the Options.[1]  Prior to expiration of the Options, Defendants reduced their beneficial ownership of Leap Wireless equity securities below the 10% threshold for insider status under the statute.

The District Court held that Rule 16b-6(d)[2], as a condition to liability, requires that a defendant be a greater than ten percent beneficial owner <u>both</u> when the option is written and when the option expires or is cancelled.  The District Court observed that the plain language of the Rule does not impose this requirement, but deemed it necessary to harmonize the Rule with the statute.  (A65-66)

---

[1]  Defendants do not dispute that they constitute a group within the meaning of §13(d) of the Securities Exchange Act of 1934 and thus their holdings in Leap Wireless securities are considered jointly held by the group for purposes of determining insider status under §16(b).  *Morales* v. *Quintel Entm't, Inc.*, 249 F.3d 115 (2d Cir. 2001).  (A54, f.1)

[2]  Rule 16b-6(d) provides in part:

> Upon cancellation or expiration of an option within six months of the writing of the option, any profit derived from writing the option shall be recoverable under section 16(b) of the Act.  The

2

The issue on appeal is as follows:

1.　　Whether the District Court's holding that Rule 16b-6(d) requires that an insider be a greater than ten percent holder both at the time when an option is written and when the option expires is contrary to the Rule, and contravenes the SEC's regulatory framework for derivatives, where (i) the plain language of "Rule 16b-6(d) . . . requires only the writing of an option and its expiration to impose liability under Section 16(b)" (A65-66), and (ii) the SEC's regulatory scheme for derivative securities is premised on the writing as distinct from exercise or expiration of a derivative security. (A62)

The Securities Exchange Act of 1934, 15 U.S.C. 78a, et seq. (the "Act"), defines "purchase" and "sale" to "include any contract to buy, purchase, or otherwise acquire." 15 U.S.C. § 78c(a)(13). In *DiLorenzo v. Murphy,* 443 F.3d 224 (2d Cir.2006)("*DiLorenzo*"), this Court held that a statutory purchase or sale takes place when a party is irrevocably committed to a transaction. *Id.* 227-230. The District Court's holding that a §16(b) purchase can take place only as of the expiration of a short call option is contrary to the statutory definitions of "purchase" and "sale" and the SEC's regulatory framework for derivative securities.

---

profit shall not exceed the premium received for writing the option. 17 C.F.R. § 240.16b-6(d).

3

Under the Rule, the SEC determined that an insider's writing of an option, the only volitional act in the transaction, is the crucial date because the insider, by contract, is "irrevocably" bound to the matching trades, subject only to the condition that the option expire unexercised.  Here, Defendants irrevocably committed to both the purchase and sale of Leap Wireless equity securities on writing the Options – a simultaneous purchase and sale.

The rationale for the Rule is simply that the insider has the opportunity to exploit his presumed inside information as of the writing of the option. *Gwozdzinsky v. Zell/Chilmark Fund, L.P.,* 156 F.3d 305, 309 (2d Cir. 1998)("*Gwozdzinsky*").  This opportunity for abuse squarely falls within the ambit of the statute.  Whether or not the insider remains a greater than 10% holder on the date of expiration is of no significance in the statutory scheme.

By construing the Rule beyond its language, the District Court implicitly rejected the SEC's authority to apply §16(b) to derivative securities, and disregarded controlling law of this Court that the expiration of an option is a "non-event" for purposes of the statute.  Now, an insider can evade the Rule simply by reducing its beneficial ownership below 10% immediately before the expiration of the derivative security. This result frustrates enforcement of the statute and is plainly not what the SEC intended.

The only sensible construction of the Rule is that an insider's writing of a short call option that expires unexercised is a simultaneous sale and purchase that leads to disgorgeable profits equal to the premiums received.

## STATEMENT OF THE CASE

Defendant appeals from the Judgment entered June 8, 2012 (A71), and the Decision (A53) dated June 5, 2012, granting Defendants' motion to dismiss the complaint (A7) pursuant to Fed. R. Civ. P. 12(b)(6).  *Roth v. Goldman Sachs Group, Inc.,* No. 11 Civ. 4820, 2012 Dist. LEXIS 78258 (S.D.N.Y. Jun. 5, 2012)(J. Oetken).

This is an action pursuant to §16(b) of the Act seeking disgorgement of approximately $1,056,000 in short-swing profits garnered by Defendants from their trading in equity securities of Leap Wireless. The plaintiff Andrew Roth is a shareholder of Leap Wireless and brought this action derivatively on behalf of the Company.  Defendants are The Goldman Sachs Group Inc., ("GS Group") and Goldman, Sachs & Co ("Goldman Sachs"), a wholly-owned subsidiary of GS Group.

Defendants constitute a group under §13(d)(3) of the Act for purposes of reporting and disgorgement requirements of §16(b) of the Act.

The transactions in dispute relate to trading in derivative securities in Leap Wireless and specifically, short call options that expired within a period

of less than six months.   Under SEC Rule 16b-6(d), any insider who writes a

short call option on securities of an issuer is liable under §16(b) to the extent

of any premium received for writing the option if it is cancelled or expires

unexercised.

On September 30, 2009, Defendants wrote short call options covering

3.2 million shares of common stock in Leap Wireless (the "Options").  The

Options were sold for $0.33 per share for a total premium of $1,056,000.

Defendants were insiders by virtue of holding more than 10% of Leap

Wireless' outstanding shares as of the writing of Options, but not as of the

expiration date of the Options.  On January 16, 2012, the Options expired

unexercised – within the 6-month period prescribed by the Rule.

The District Court granted Defendants' motion pursuant to Fed. R. Civ.

P. 12(b) (6) to dismiss the complaint (A7) on the ground that the Defendants

were not statutory insiders at both the time of writing and expiration of the

Options (respectively, the "sale" and "purchase" transactions) as required by

the statute.  Specifically, the District Court held that "the only way to read

Rule 16b-6(d) as being consistent with §16(b) is if the expiration of an option

can serve as a purchase or sale to match the purchase or sale that takes place

when the option is written." (A64)  The District Court rejected Plaintiff's

position, i.e., that the writing of the Options constituted a "simultaneous" sale

and purchase of Leap Wireless equity securities as contrary this Court's precedents.  (A67)  The District Court erroneously concluded that the statute and this Court's decisions in *Magma Power,* 136 F.3d 316 (2d Cir. 1998)("*Magma Power*") and *Gwozdzinsky* preclude simultaneous purchase and sale transactions.  (A68)   The District Court erred in its reliance on these precedents, which do not address the question of  "simultaneous" transactions.

The District Court Decision conflicts with settled authority of this Court and the plain language of the Rule in at least three respects:

First, SEC Rule 16b-6(d) by its plain and unambiguous language requires only that a party be an insider at the time of the §16(b) event – the writing of the Options – which should be viewed as a simultaneous purchase and sale under the statute if the option expires unexercised within six months.

Second, in *DiLorenzo*, this Court held that a statutory purchase or sale takes place when a party is irrevocably committed to a transaction.  443 F.3d at 227-230.  The Act defines "purchase" and "sale" to "include any contract to buy, purchase, or otherwise acquire."  15 U.S.C. § 78c(a)(13).  The District Court's holding that the matching §16(b) transaction can take place only as of the expiration of short call option is contrary to the statutory definitions of "purchase" and "sale" which look to the law of contract to define triggering

7

dates for a transaction.  *See* Arnold S. Jacobs, <u>Disclosure & Remedies Under the Sec. Laws</u>, 5A § 4:166 (June 2012).[3]

Contrary to the District Court's Decision, this Court in *Gwozdzinsky* rejected a narrow reading of the SEC derivative security rules as applied to § 16(b).  With respect to Rule 16b-6(d), the Court stated:

> This rule is designed to prevent a scheme whereby an insider with inside information favorable to the issuer writes a put option, and receives a premium for doing so, knowing, by virtue of his inside information, that the option will not be exercised within six months.

156 F.3d at 309.

Finally, the District Court's decision is contrary to the SEC's regulatory framework that governs the application of §16(b) to derivative securities.  *See* Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Exchange Act Release No. 34-28869, 56 Fed. Reg. 7242, 7248 (Feb. 21, 1991)("1991 Release").  Under this framework, the creation of a "derivative security" is recognized as the "event" that presents an opportunity for speculative abuse.  The actual expiration of the option is a <u>non-event</u> under

---

[3]  "The concept that a Section 16 (b) purchase or sale can take place before the transaction is complete under state law is consistent with the statutory definitions of 'purchase' and 'sale'; the wording of those definitions includes contracts to buy or to sell.  Focusing on the time the parties are irrevocably committed to act also accords with the purpose of Section 16(b), to stop insiders' speculative abuses, since insiders cannot speculate once they are

the statute.[4] *Allaire Corp. v. Okumus*, 433 F.3d 248, 251-252 (2d Cir. 2006)("*Allaire*").  *See also,* Peter J. Romeo and Alan L. Dye, <u>Section 16 Treatise And Reporting Guide</u>, 3rd Ed. (2008), § 10.01 [5], p. 944 ("The SEC effectively codified the single transactions liability approach in 1991 through the adoption of rules relating to derivative securities . . ..")

## <u>STATEMENT OF FACTS</u>

Under the Rule, an insider who writes a short call option on securities of an issuer is liable under §16(b) to the extent of any premium received for writing the option if it is cancelled or expires unexercised within six months of its writing.  That is precisely what happened here.  On September 30, 2009, Defendants wrote Options covering 3.2 million shares of common stock in Leap Wireless.  The Options expired unexercised on January 16, 2010 – within the 6-month period prescribed by the Rule.  Defendants realized premiums in the total amount of $1,056,000 that is subject to disgorgement to Leap Wireless as the issuer.

---

irrevocably committed."  (footnotes omitted)
[4]   Before 1991, the purchase or sale of securities underlying a derivative security occurred on the exercise of the derivative, rather than upon its creation.  In 1991, the Securities and Exchange Commission amended the rules so that the acquisition of a "derivative security" is also considered the acquisition of the underlying securities for purposes of Section 16(b).  *See* 1991 Release, 56 Fed. Reg. 7242, 7250; SEC Rule 16b-6(a), 17 C.F.R. 240.16b-6(a).

Defendants acted as a group within the meaning of §13(d) of the Act and thus their holdings in Leap Wireless equity securities are considered jointly held by the group for purposes of determining insider status under §16(b).  *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115 (2d Cir. 2001).

Defendants acknowledge that they were insiders by virtue of holding more than 10% of Leap Wireless' outstanding shares as of the writing of the Options.   Prior to the expiration of the Options, Defendants reduced their holdings in Leap Wireless below the 10% beneficial ownership threshold necessary to establish insider status.  (A54-55) [5]

## SUMMARY OF ARGUMENT

This Court in *Gwozdzinsky* rejected a narrow reading of the SEC derivative security rules as applied to §16(b).  The purpose of Rule 16b-6(d) is to guard against speculative abuse by requiring disgorgement of the premium that an insider receives for "writing" a short call option.  *Gwozdzinsky,* 156 F.3d at 308-309; *Allaire,* 433 F.3d at 252-53.

The District Court erred in holding that Rule 16b-6(d), as a condition to liability, requires that a defendant be a greater than ten percent beneficial owner both when the option is written and when it is cancelled or expires.

---

[5]   The complaint (A7) also alleges claims relating to short call options dated October 2, 2009 that are not at issue on this appeal.  (A55, f. 2)

10

The Rule does not impose this requirement and grafting it onto the Rule undermines the SEC's regulatory framework for derivative securities by permitting an insider to exploit insider information. *See* 1991 Release, 56 Fed. Reg. 7242, 7248 ("[T]he Commission is adopting a comprehensive regulatory framework, in order to effect the purposes of section 16 and to address the proliferation of derivative securities and the popularity of exchange-traded options.").

Under the Rule, the SEC made it clear that it premised liability on the writing of an option by the insider, regardless of whether the insider remained an insider on the date of the option's expiration. The SEC determined that the insider's writing of the option, the only volitional act in the transaction, is the crucial date because the insider, by contract, is "irrevocably" bound to the matching trades, subject only to the condition that the option expired unexercised.

Under the statute the purchase and sale takes place simultaneously by the terms of the option contract. 15 U.S.C. § 78c(a)(13); *see also,* Arnold S. Jacobs, Disclosure & Remedies Under the Sec. Laws, 5A § 4:166 (June 2012). The rationale for the Rule is simply that the insider has the opportunity to exploit his presumed inside information as of the writing of the option. *Gwozdzinsky,* 156 F.3d at 309.  This opportunity for abuse squarely falls

within the ambit of the statute.  Whether or not the insider remains so on the date of expiration is of no significance in the statutory scheme.

By construing the Rule beyond its language, the district court implicitly rejected the SEC's authority to apply §16(b) to derivative securities, and disregarded controlling law of this Court that the expiration of an option is a "non-event" for purposes of the statute.  *Allaire,* 433 F.3d at 251-252.  Now, an insider can evade the Rule simply by reducing his beneficial ownership below 10% immediately before the expiration of a short call option.  This result frustrates enforcement of the statute and is plainly not what the SEC intended.

The only sensible construction or Rule 16b-6(d) is that the writing of a short call option is a simultaneous purchase and sale which creates liability when the option expires unexercised within six months.  The Decision should be reversed and judgment should be entered for the Plaintiff.

## **STANDARD OF REVIEW**

This Court reviews the District Court's conclusions of law under a *de novo* standard.  *Pullman-Standard v. Swint,* 456 U.S. 273, 290 n.19 (1982).

12

## ARGUMENT

## I.  THE DISTRICT COURT ERRED IN ITS CONSTRUCTION OF RULE 16b-6(d) AND DISMISSAL OF THE COMPLAINT

The District Court misinterpreted Rule 16b-6(d) as it applies here and in doing so, has thwarted the SEC's 1991 regulatory framework for derivative securities.  Under this framework, the acquisition of a "derivative security" is the "event" where there is an opportunity for speculative abuse.   The actual expiration of the option is a <u>non-event</u> under the statute.  *Allaire,* 433 F.3d at 251-252.

### A.      Background of the Statute and the Rule

Section 16(a) of the Act ("§ 16(a)") defines insiders as "[e]very person who is directly or indirectly the beneficial owner of more than ten per centum of any class of any equity security . . . which is registered pursuant to section 12 . . . or who is a director or an officer of the issuer of such security."  *Id.* Defendants admit that they were statutory insiders of Leap by virtue of their greater than 10% stock ownership at the time the Options were written.

Section 16(b) provides that if a statutory insider purchases and sells or sells and purchases shares of any equity security of such an issuer within a period of less than six months, any profits arising from those transactions are recoverable by the issuer.  *See* 15 U.S.C. §78p(b); *Kern County Land Co. v.*

*Occidental Petroleum Corp.,* 411 U.S. 582, 592 (1973)("*Kern County*");

*Foremost-McKesson, Inc. v. Provident Sec. Co.,* 423 U.S. 232, 251 (1976).

Section 16(b) was intended to "prevent [] the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer." 15 U.S.C. § 78p(b).  Strict liability and disgorgement were imposed by §16(b) "to remove any temptation for insiders to engage in transactions which 'may serve as a vehicle for the evil which Congress sought to prevent -- the realization of short-swing profits based upon access to inside information.'"  *Magma Power,* 136 F.3d at 320, *quoting Kern County,* 411 U.S. at 594.

The Second Circuit in *Magma Power* explained the rationale of the statute as follows: "[s]ection 16(b) operates mechanically, and makes no moral distinctions, penalizing technical violators of pure heart, and bypassing corrupt insiders who skirt the letter of the prohibition. 'Such is the price of easy administration.'" *Magma Power,* 136 F.3d at 320-21 (citations omitted).

In 1991, the SEC, in recognition of the growth of derivative securities and their effect on the markets, issued regulations to govern the application of §16(b) to derivative securities.  *See* 1991 Release, 56 Fed.Reg. 7242, 7248 ("[T]he Commission is adopting a comprehensive regulatory framework, in

order to effect the purposes of section 16 and to address the proliferation of

derivative securities and the popularity of exchange-traded options.")

### B.     The Decision Improperly Adds A New Requirement to the Rule Which Undermines The SEC's Regulatory Framework

As part of that comprehensive regulatory plan, the SEC enacted Rule

16b-6(d), which provides that the writing of a short call option gives rise to

short-swing liability if the option expires "within six months from writing the

option".  The writing of the option is the critical transaction for § 16(b)

purposes; the actual expiration of the option is a <u>non-event</u> under the statute.

As this Court explained in *Allaire,* 433 F.3d at 252:

> Under the district court's view, which we share,
> section 16(b) covers only the transaction in which
> the parties agree to the terms of sale, because that
> is the one in which the writer of the option can be
> deemed to be using his or her inside information to
> arrive at the option's terms on a favorable basis.
> Just as the holder's exercise of a call option is not
> a "sale" by the writer under Rule 16b-6(a), neither
> is the expiration of a call option a "purchase" by
> the writer under that provision.

The Rule further provides for the measure of disgorgement upon the

expiration of the option within the statutory period, providing that "[t]he profit

shall not exceed the premium received for writing the option.  17 C.F.R.

§ 240.16b-6(d).

In *Allaire,* this Court explained:

> Under this provision, if an insider writes an option
> that expires unexercised within six months and
> profits from doing so on account of having been
> paid by the purchaser for a right to buy shares that
> the purchaser did not exercise, the writer will be
> held liable under section 16(b) for the amount the
> purchaser paid him or her for the option. *See
> Gwozdzinsky v. Zell/Chilmark Fund, L.P.,* 156
> F.3d 305, 309 (2d Cir.1998).

433 F.3d at 252-253.

Neither the Rule itself, the SEC releases, nor any other authority supports the proposition that the insider has to be an insider when the option expires. The imposition of this requirement is found solely in the District Court's decision. Nor does it make any sense. The premise of the Rule is that the insider's writing of the option, not the option's expiration, is fraught with the opportunity for speculative abuse. The writing of the option is the sole volitional act; the expiration is beyond the insider's control. The District Court erred by reading into the Rule a requirement that is not there.

The District Court's decision will cause great disruption to the SEC's regulatory system. Any time an insider trades in derivative securities on the basis of material nonpublic information, the insider can evade §16(b) liability simply by reducing his beneficial ownership below 10% immediately before the expiration of the derivative security. Such a result is plainly not the SEC's

intent, which should be given great deference. *See*, *Huppe v. WPCS Int'l Inc.*, 670 F.3d 214 (2d. Cir 2012); *Roth v. Perseus, LLC,* 522 F.3d 242 (2d Cir. 2008).

**C.    The Proper Analysis Is That The Writing of
The Options Represents a Simultaneous Purchase
And Sale of the Underlying Equity Security**

The District Court **rejected** Plaintiff's argument that the writing of the Options constituted a simultaneous purchase and sale – misapprehending this Court's decisions in *Magma Power* and *Gwozdzinsky* to require "separate" as distinct from "simultaneous" purchase and sale transactions.  (A67-68)   In so holding, the District Court rejected the SEC's regulatory framework for derivative securities and its underlying policies.  *Id.*

Under the Rule, the SEC premised liability on the writing of an option by the insider, regardless of whether the insider remained an insider on the date of the option's expiration.  The SEC has determined that the insider's writing of the option, the only volitional act in the transaction, is the crucial date because the insider, by contract, is "irrevocably" bound to the matching trades, subject only to the condition that the option expire unexercised.

Under the statute, the purchase and sale takes place simultaneously by the terms of the option contract.  15 U.S.C. § 78c(a)(13); *see also, Allaire,* 433 F.3d at 252.  The rationale for the Rule is simply that the insider has the

17

opportunity to exploit his presumed inside information as of the writing of the option. *Gwozdzinsky,* 156 F.3d at 309. This opportunity for abuse squarely falls within the ambit of the statute. Whether or not the insider remains a greater than 10% holder on the date of expiration of a short call or put option is of no significance in the statutory scheme. *See* Arnold S. Jacobs, Disclosure & Remedies Under the Sec. Laws, 5A § 4:166, (June 2012).

The notion that a transaction can be both a purchase and a sale for 16(b) purposes has been approved by a number of courts where necessary to vindicate the purposes of the statute. *See*, *Colema Realty Corp. v. Bibow*, 555 F. Supp. 1030, 1039 (D. Conn. 1983)(exercise of options through "pyramiding" deemed to be a simultaneous purchase and sale of securities); *Matas v. Seiss*, 467 F. Supp. 217, 224 (S.D.N.Y. 1979)(exercise of stock appreciation rights for cash deemed to be a simultaneous purchase and sale); *see also Reece Corp. v. Walco National Corp*., 565 F. Supp. 158, 162-163 (S.D.N.Y. 1981)(sale made after an insider went below 10% did not avoid the statute where it was in effect part of a prior sale that brought the insider below 10% beneficial ownership).

This Court in *DiLorenzo* stated that "'the judicial tendency, especially in this circuit, has been to interpret Section 16(b) in ways that are most consistent with [its] legislative purpose.'" *DiLorenzo,* 443 F.3d at 227,

*quoting Steel Partners II, L.P. v. Bell Industries, Inc.,* 315 F.3d 120, 124 (2d

Cir. 2002); *see also, Kern County*; *Booth v. Varian Assoc.*, 334 F.2d 1 (1st Cir.

1964) *cert. denied,* 379 U.S. 961 (1965).  As the SEC has made clear, that

imperative requires that the writing of an option that expires unexercised

within six months be deemed a simultaneous purchase and sale, which

requires disgorgement of the premiums.

<u>**Conclusion**</u>

The Decision dismissing the complaint should be reversed and this

Court should direct the District Court to enter judgment for the Plaintiff.

Dated:  September 24, 2012

OSTRAGER CHONG FLAHERTY
  & BROITMAN P.C.


By: _____/s_____
    Glenn F. Ostrager

570 Lexington Avenue
New York, New York 10022
(212) 681-0600

Paul D. Wexler
KORNSTEIN VEISZ WEXLER
  & POLLARD LLP
757 Third Avenue
New York, New York 10017
(212) 418-8692

*Attorneys for Plaintiff-Appellant*
*Andrew E. Roth*